Chancellor Johnson
delivered the opinion of the Court.
The decree of the Circuit Court, dismissing the plaintiffs’ bill, is *479 founded on the conclusion that the facts on which the defence rests are true, and upon a careful review of the evidence taken on the trial that seems to be the necessary conclusion.
On the argument here, error in the conclusion as to the matters of fact has not been much pressed; but conceding that to be correct, it has been insisted that as the testator took these children under his immediate care and protection, and provided for and treated them in all respects as a father would his legitimate children, the obligations and duties of legitimate children devolved on them ; consequently in law he was entitled to the proceeds of their labor, and the application of them to the purchase of lands for their use was a violation of the act referred to.
The obligations between parents and children are reciprocal. On the parent devolves the duty of maintaining, educating and providing for the child ; in return for which the child owes obedience and assistance during minority, and reverence and respect always; and it follows necessarily, that if in law either are absolved from these obligations, so also is the other. Now, it is very clear that the putative father is not entitled in law to the custody of liis natural child, in opposition to the claims of the mother; nor is he bound to provide for it further than is required by express enactments* of the legislature. 2 Kent Com. 118, 1st Ed. r*ggg The child cannot inherit from the father, and the extent to which L the father can provide for his illegitimate child, is limited by the Act before referred to. The father is not, therefore, entitled in Jaw to the services of his natural child. It is said, however, that when a father assumes and discharges the duties of a parent, corresponding duties arise on the part of the natural child ; and this is true so long as these-relations exist. But these relations are merely conventional, and being voluntary, may be dissolved at pleasure. Not so as to the relations between the father and his legitimate children. The obligations between them are imposed by law, and neither can be absolved from them. The right of the putative father to the custody and services of his natural child, must therefore arise out of contract, in which the parties are at liberty to stipulate for themselves. There is certainly nothing in these relations to prevent the father from rewarding the child for its labor, or being its agent to invest the proceeds; on the contrary, in despite of the stern policy which alienates the bastard from his putative father, nature has bound them together by ties which cannot be severed; and it is impossible to resist the feeling that there is a moral duty imposed on the father, to aid the child when he can do so without violating the law, or doing wrong to others.
I am well aware that there is much danger of abuse in the application of this principle, and that without great circumspection it will be made a cover for evading the Act, but of its correctness there can be no question ; and abuses may be guarded against by requiring clear and unequivocal evidence of the fairness and reasonableness of the transaction. Of this, the present case may serve as an example; for it is apparent that the defendants’ testator was a mere drone in the hive, and that the land conveyed to the defendants is a very inadequate compensation for the long and faithful services of the defendants, out of the proceeds of which it was paid for.
The case of Hesketh v. Growing, 5 Esp. N. P. Rep. 131, has been referred to, for the position that the putative father is liable for necessaries *480 provided for a bastard child whom he had adopted as his own: and hence it is concluded that out of this relation all the obligations of parent and child arise. And this is put expressly on the ground of an implied contract, arising out of the defendant holding himself out to the world as *6991 being- bound to provide *for the child, and not on the footing- of -I parent and child; and the same rule would obtain in the case of a foundling or other stranger.
There are doubtless many cases in which a quasi consanguinity between the putative father and his bastard child, would be recognized; as in Haines v. Jeffel, 1 Lord Ray. 68, in which it is said that the father and illegitimate daughter are within the degrees of consanguinity in which marriages are .prohibited. So in Rex v. Cornforth, 2 Str. 1162, where it is held that an information would lie for the abduction of a bastard infant daughter being under the care of her putative father. But these are exceptions to the general rule, arising from moral and necessary causes, and by no means impugn the rule itself.
It is therefore ordered and decreed that the appeal be dismissed, and that the decree of the Circuit be, and the same is, hereby affirmed.
Chancellors De Sausstjre, Harper and Johnston, concurred.